**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**GREGORY A.E. WALKER.,**

>  **Plaintiff,**

**v.**                                                                  **Civil Action No. 3:20cv149**

**SHARON D. HILL,** *et al.*,

>  **Defendants.**

>  <u>**MEMORANDUM OPINION**</u>

This matter comes before the Court on two motions:

(1)    Defendants Lynn M. Tucker and Dankos, Gordon & Tucker, P.C.'s (collectively, the "Tucker Defendants") Rule 12(b)(6)[1] Motion to Dismiss (the "Tucker Motion to Dismiss"), (ECF No. 21); and,

(2)    Defendant Sharon D. Hill's Motion to Dismiss Pursuant to Rules 12(b)(6) and 12(b)(1)[2] (the "Hill Motion to Dismiss") (collectively, the "Motions"), (ECF No. 24).

Plaintiff Gregory A.E. Walker responded to the Tucker Motion to Dismiss, (ECF No. 25), and the Hill Motion to Dismiss, (ECF No. 30-1). The Tucker Defendants and Sharon D. Hill (collectively, the "Defendants") replied. (ECF Nos. 26, 37).

These matters are ripe for adjudication. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would

---

[1] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] Rule 12(b)(1) allows dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

not aid the decisional process.  The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[3]

and 1367(a).[4]  For the reasons stated below, the Court will grant the Hill Motion to Dismiss in its

entirety and grant in part and deny in part the Tucker Motion to Dismiss.

## I.  Factual and Procedural Background

Walker's allegations arise out of the sale of certain real property located at 16148

Buckfast Place in Hanover County, Virginia (the "Hanover Property").  (Second Am. Compl.

"SAC" ¶¶ 2, 7–11, ECF No. 20.)  Defendants provided and serviced the loan to Walker to

purchase the Hanover Property.  (*Id.*)  In the six-count Second Amended Complaint, Walker

generally claims that Defendants fraudulently caused him to sign a deed in lieu of foreclosure;

and thus, any threats to record such a deed amounted to violations of the FDCPA.

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Walker, in the Second
Amend Complaint, alleges Defendants violated the Real Estate Settlement and Procedures Act
("RESPA"), 12 U.S.C. §§ 2601–16; and the Fair Debt Collections Practices Act ("FDCPA"), 15
U.S.C. § 1692.

[4] The Court exercises supplemental jurisdiction over Walker's state law claims pursuant
to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original
jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are
so related to claims in the action within such original jurisdiction that they form part of the same
case or controversy . . . .").  The Second Amended Complaint alleges common law fraud and
breach of the implied covenant of good faith and fair dealing.

A. **Factual Allegations**[5]

In 2019, Christopher R. Cieslarcyzk sold Walker the Hanover Property.  (SAC ¶ 7.)

Pursuant to the sale, Cieslarcyzk "executed a deed conveying ownership of the home to Walker."

(*Id.*)  On March 1, 2019, Walker obtained a loan of $350,000 from Hill, evidenced by a purchase

money note (the "Note"), in order to tender the purchase price.  (*Id.* ¶ 11; *see* First Am. Compl.

Ex. 1 "Purchase Money Deed of Trust Note," ECF No. 2-1.)  The Note included various line-

items, including a condition that should Walker default on the loan, "there shall be payable . . . as

attorney's fee for such collection, twenty percent (20.00%) of the amount then due which is

hereby agreed upon as a reasonable charge."  (Note 2.)

The same day Walker obtained the loan from Hill, Walker signed a deed of trust (the

"Deed of Trust") to secure the Note which "was recorded in the public land records at Deed

Book 1218, beginning at page 2468 and became a lien on the home."  (SAC ¶ 12; *see also* First

Am. Compl. Ex. 2 "Purchase Money Deed of Trust," ECF No. 2-2.)  Walker also signed a deed

in lieu of foreclosure (the "Deed in Lieu of Foreclosure," and collectively with the Note and the

Deed of Trust, the "Loan Agreements") that same day.  (SAC ¶ 13, *see also* First Am. Compl.

Ex. 3 "Deed in Lieu of Foreclosure," ECF No. 2-3.)

---

[5] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in Walker's Second Amended Complaint as true, and draw all reasonable inferences in favor of Walker.  *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

Sometime around October 2019,[6] Walker defaulted on the loan.  (*See* First Am. Compl. Ex. 4 "February 20, 2020 Notice of Default," ECF No. 2-4.)  On February 20, 2020, the Tucker Defendants sent Walker a letter serving as notice of default and seeking payments past due under the Note (the "February 2020 Notice").  (*Id.*)  Such payments included:  (1) accrued interest of 8% from October 1, 2019 through February 1, 2020 amounting to $11,666.65; (2) late charges of 5% amounting to $583.35; and, (3) attorneys' fees at 20% of the amount due for $2,450.00 total. (*Id.*)  In sum, the February 2020 Notice requested payment of $14,700.00.  (*Id.*)  The February 2020 Notice warned that "[f]ailure to cure the default by payment of the full amount due on or before March 6, 2020 will result in the acceleration and call of the Note in full."  (*Id.* 2.) Similarly, the February 2020 Notice also stated that "[i]f the default is not cured on or before March 6, 2020, the noteholder intends to exercise its right to record the Deed in Lieu of Foreclosure which you signed as a condition of the loan agreement."  (*Id.*)  The end of the letter includes, in relevant part, the following disclosure:

> **This is an attempt to collect a debt** and any information obtained will be used for that purpose.  If you do not dispute the validity of this debt or any portion of it within 30 days after receipt of this letter, we will assume it is valid.  If you dispute the validity of this debt or any portion of it in writing within 30 days, we will mail verification of the debt to you.  At your request in writing, within 30 days, we will provide you with the name and address of the original creditor if different from the current creditor.  If requested to by our client, we may proceed to institute court action without waiting 30 days if the debt is not disputed.

(*Id.* (emphasis added).)

On March 19, 2020, the Tucker Defendants sent Walker a second notice of default and call (the "March 2020 Notice") (collectively, with the February 2020 Notice, the "2020

---

[6] Walker, in the Second Amended Complaint, does not allege any facts as to his payment history on the loan.  (*See* SAC.)

Notices").  (First Am. Compl. Ex. 5 "March 19, 2020 Notice of Default and Call," ECF No. 2-

5.)[7]  The March 2020 Notice requested payment of the Note in full based on a "failure to make

payments under the Note pursuant to its terms and to cure said default as demanded in [the

February] Notice of Default."  (*Id.*)  The demand included:  (1) principal balance due as of

March 1, 2020 amounting to $350,000; (2) accrued interest of 8% from October 1, 2019 through

March 1, 2020 equaling $13,921.98; and, (3) attorneys' fees at 20% of the amount due for

$10,000.  (*Id.*)  The March 2020 Notice demanded a total of $373,921.98.  (*Id.*)  The March 2020

Notice warned that if "this debt is not paid on or before April 1, 2020, the noteholder through the

Trustee will invoke the power of sale and other remedies permitted by applicable law."  (*Id.* 2.)

The March 2020 Notice included the same disclosure language:

> This is an attempt to collect a debt and any information obtained will be used for
> that purpose.  If you do not dispute the validity of this debt or any portion of it
> within 30 days after receipt of this letter, we will assume it is valid.  If you dispute
> the validity of this debt or any portion of it in writing within 30 days, we will mail
> verification of the debt to you.  At your request in writing, within 30 days, we will
> provide you with the name and address of the original creditor if different from the
> current creditor.  If requested to by our client, we may proceed to institute court
> action without waiting 30 days if the debt is not disputed.

(*Id.*)

---

[7] Walker does not attach the cited exhibits to the Second Amended Complaint.  Walker
incorporates the exhibits here by reference to the First Amended Complaint, (ECF No. 2).
Although he does so improperly because any Amended Complaint must rise or fall on its own,
the Court will consider the documents attached to the First Amended Complaint when assessing
the Second Amended Complaint in the interest of judicial efficiency and because Defendants
also refer to the documents.  The Court prefers to resolve disputes on their merits as opposed to
technicalities, *Ostrzenski v. Seigel*, 177 F.3d 245, 252 (4th Cir. 1999), especially when all Parties
acknowledge the important of the documents without contesting their authenticity.
    "[A] court may consider official public records, documents central to plaintiff's claim,
and documents sufficiently referred to in the complaint so long as the authenticity of these
documents is not disputed."  *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006)
(citations omitted); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)
(reiterating that the Court may also properly "consider documents that are explicitly incorporated
into the complaint by reference . . . and those attached to the complaint as exhibits").

Walker, in the Second Amended Complaint, alleges that Defendants fraudulently induced Walker to sign the Deed in Lieu of Foreclosure.  (SAC ¶ 13.)  Walker avers that he only "signed and acknowledged before a notary public" the second page of the deed in lieu of foreclosure.  (*Id.* ¶¶ 24, 27.)  Walker states that thereafter "in a letter dated December 12, 2019[8] . . . [Hill] threatened Walker with recordation of" the Deed in Lieu of Foreclosure (the "December 2019 Letter").  (*Id.* ¶ 30.)  Walker further alleges that Hill at some point in time "referred the loan for non-judicial action before the loan was 120 days in arrears," in violation of RESPA.  (*Id.* ¶ 16.)

Walker brings six counts against Defendants.  Four counts (I, II, III, and VI) identify Hill as the Defendant.  Two counts (IV and V) lie against the Tucker Defendants.

**Count I:**    **The RESPA Claim:**  "Hill breached the servicing restrictions in RESPA because she referred the loan for non-judicial action before the loan was 120 days in arrears."

**Count II:**   **The Fraud Claim:**  Hill "intentionally misled Gregory into thinking that the loan was limited to the normal terms of a conventional mortgage loan, without the later addition of a page to the said second page to make it appear that Hill had signed and acknowledged a deed in lieu of foreclosure."

**Count III:**  **The Breach of Implied Covenant of Good Faith and Fair Dealing Claim:**  Hill violated "an implied covenant of good faith and fair dealing" by acting "in bad faith in such a way as to deprive Walker of the central benefits of his rights under the deed of trust."

**Count IV:**   **The 2019 FDCPA Claim:**  The Tucker Defendants violated the FDCPA by "threaten[ing] to record the deed in lieu of foreclosure" that they "induced Walker to sign" without disclosing the first page.

**Count V:**    **The 2020 FDCPA Claim:**  The Tucker Defendants violated the FDCPA by preemptively demanding attorneys' fees when the Note only allowed such fees upon the loan's maturity.

---

[8] Walker does not attach to the Second Amended Complaint or any complaint previously filed a letter dated December 12, 2019.

6

> **Count VI:**    **The Declaratory Judgment Claim:** "Hill is not entitled to make use of the document stating it is a deed in lieu of foreclosure to deprive Gregory of ownership of his home."

(SAC 3–16.)  Walker seeks compensatory damages, including those for emotional distress, statutory damages, and attorneys' fees.  (*See generally id.*)

### B.    Procedural Background

On March 2, 2020, Walker's Initial four-count Complaint emanated from the sale of the Hanover Property.  (Compl. ¶¶ 2, 7–11, ECF No. 1.)  On March 28, 2020, Walker filed the first Amended Complaint.  (ECF No. 2.)

On May 22, 2020, Hill filed her first Motion to Dismiss (the "First Hill Motion to Dismiss").  (ECF No. 12.)  On June 12, 2020, twenty-one (21) days later, Walker filed the Motion for Leave to Amend (the "Motion for Leave").  (ECF No. 16.)  On July 6, 2020, the Court granted Walker's Motion for Leave to Amend under Federal Rule of Civil Procedure 15(a)(1)(B).  (July 6, 2020 Order 2, ECF No. 19.)  On that same day, Walker filed the six-count second Amended Complaint (the "Second Amended Complaint").  (ECF No. 20.)  On July 16, 2020, the Tucker Defendants filed the Tucker Motion to Dismiss, (ECF No. 21).  Walker responded, (ECF No. 25), and the Tucker Defendants replied, (ECF No. 26.)

On July 27, 2020, twenty-one (21) days after Walker filed the Second Amended Complaint, Hill untimely filed the Hill Motion to Dismiss presently before the Court.  (ECF No. 24.)  Walker did not timely respond to the Second Motion to Dismiss.  On September 13, 2020, over a month after Hill filed the Motion to Dismiss, Walker filed the Motion to Strike or Deny Sharon D. Hill's Motion to Dismiss, Alternatively, Motion for Leave to File (the "Motion to Strike or to File"), claiming Hill's Second Motion to Dismiss was untimely.  (ECF No. 30.)  On September 27, 2020, Hill timely responded to the Motion to Strike or to File.  (ECF No. 32.)  On

that same day, Hill filed the Motion to Enlarge Time and To Deem Motion to Dismiss Timely Filed (the "Motion to Enlarge Time"). (ECF No. 33.) On October 13, 2020, Walker responded to the Motion to Enlarge Time. (ECF No. 34.) On September 20, 2020, the Court granted the Motion to Enlarge Time, deeming the Hill Motion to Dismiss timely filed based on a finding of excusable neglect. (ECF No. 36.) The Court then granted in part and denied in part the Motion to Strike or to File, allowing Walker to file the already docketed memorandum in opposition to Hill's Motion to Dismiss. (*Id.*)

For the reasons that follow, the Court will grant the Hill Motion to Dismiss Counts I, II, III, and VI in its entirety, and will grant the Tucker Motion to Dismiss Count IV, but deny Count V.

## II.  Standards of Review

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal district courts are courts of limited subject matter jurisdiction. *United States ex rel. Vuyvuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). This Court must, as a result, determine whether it has jurisdiction over the claims at issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1)).

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a challenge, a court assumes the truth of the facts alleged by plaintiff.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Alternatively, a Rule 12(b)(1) motion may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings.  *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction.  *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *See id.*; *see also Adams*, 697 F.2d at 1219.

Hill also challenges the Court's supplemental jurisdiction over Walker's declaratory judgment claim in Count VI.  Because the Court later concludes in a later discussion that no

"actual controversy exists" as to Counts I, II, and III, the Court need not weigh Hill's challenges to its supplemental jurisdiction over Walker's state law claims.

###### B.   Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a Complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a Complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.")  Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the Complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted).  The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at

467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the Complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

### III.  Analysis

Defendants challenge the sufficiency of Walker's Second Amended Complaint on several grounds.  Assuming all factual allegations as true and drawing all reasonable inferences in favor of Walker, the Court will grant Defendants' Motions to Dismiss as to all of Walker's claims save Count V.

First, the Court will dismiss the RESPA Claim in Count I because Walker does not plausibly allege that Hill caused the loan to be referred for nonjudicial action before the 120-day requirement.  Second, the Court will dismiss the Fraud Claim in Count II because Walker offers only formulaic and conclusory allegations that he reasonably and justifiably relied on Hill's representations of the Deed in Lieu of Foreclosure.  Third, the Court will dismiss the Breach of the Implied Covenant of Good Faith and Fair Dealing in Count III because Walker does not, even read favorably, show a legally enforceable obligation existed prior to Walker signing the Loan Agreements.

Next, the Court will discuss Counts IV and V in tandem as Walker brings both claims against the Tucker Defendants, and not Hill, under the FDCPA.  The Court will dismiss the 2019 FDCPA Claim in Count IV because Walker does not allege facts plausibly giving rise to a reasonable inference that the Tucker Defendants violated the FDCPA by threatening to record the Deed in Lieu of Foreclosure.

The Court will deny the Tucker Motion to Dismiss only to the 2020 FDCPA Claim in Count V because, read favorably, Walker states a claim for relief plausible on its face that the

Tucker Defendants misrepresented the terms of the Lean Agreements as to Walker's total amount due by preemptively including attorneys' fees.

Finally, the Court will dismiss the Declaratory Judgment Claim in Count VI against Hill because no actual controversy exists for declaratory judgment to lie against Hill.

### A.   The Court Will Dismiss the RESPA Claim in Count I Because Walker Does Not Plausibly Allege that Hill Referred the Loan for Nonjudicial Foreclosure Action in December 2019 Before the 120-Day Limit

Even reading the Second Amended Complaint favorably, Walker's allegation that Hill referred the loan for nonjudicial action before the loan was 120 days in arrears does not plausibly give rise to an entitlement to relief, so the Court will dismiss Count I.

The Real Estate Settlement Procedures Act ("RESPA") provides, "[a] servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless . . . [a] borrower's mortgage loan obligation is more than 120 days delinquent."  12 C.F.R. § 1024.41(f)(1)(i).  Generally, the 120-day requirement controls when a servicer may "*initiate* a foreclosure action."  *Adt v. Nationstar Mortgage*, No. 3:17cv162, 2018 WL 1569078, at *6 (E.D. Va. Mar. 30, 2018) (emphasis added) (discussing whether defendant violated 12 C.F.R. § 1024.41 by mailing plaintiff a "notice of pending foreclosure sale on the Property").

Walker does not explicitly state the date of his default, and the date of default does not appear in any of the accompanying exhibits to the Second Amended Complaint.  Reading Walker's allegations favorably, a reasonable inference suggests that Walker may have defaulted on the loan sometime around early October 2019.  The Court relies on the February 2020 Notice that Walker placed in the record which demands interest from October 1, 2019 at an 8% rate, or $77.77 per day.  (Feb. 20, 2020 Notice 1.)  The February 2020 Notice claims Walker owed

$11,666.65 in interest, amounting to 150 days in interest.  (*See id.* (dividing $11,666.65 by the $77.77 per day rate to reach 150 days).)

As such, Walker could have defaulted on the loan as early as 150 days prior to the February 2020 Letter, leading the Court to a default date of September 23, 2019.  (*See id.*)  Even taking this liberal estimate into account, because the Second Amended Complaint does not provide the Court with the date of default, Walker has not plausibly claimed for a violation of RESPA.

Walker also does not identify the date that Hill "referred the loan for non-judicial action." (SAC ¶ 16.)  Walker appears to argue that Hill caused the loan to be referred to foreclosure on or around December 12, 2019.[9]  Nevertheless, Walker does not attach the December 2019 Letter to any of the three complaints.  Nor does Walker allege anything more than mere labels and conclusions that Defendants provided official notice of an intent to initiate nonjudicial foreclosure proceedings in the December 2019 Letter.[10]  Therefore, the Court concludes that even reading the Second Amended Complaint favorably, Walker fails to state a claim that Hill

---

[9] The Court presumes that Walker grounds such a claim on the December 12, 2019 date because the February 20, 2020 date, as correctly averred by Hill, would fall far beyond the 120-day limit.  (*See* Hill Motion to Dismiss 4, ECF No. 24.)

[10] To the extent Walker suggests that the December 2019 Letter would have acted as a notice of nonjudicial action, he cannot prevail.  Walker received notices in both February and March 2020 that demanded payment on the loan prior to any foreclosure action and warning of potential actions Defendants could take prior to power of sale.  (*See* Feb. 20, 2020 Notice; Mar. 19, 2020 Notice.)   Notably, Defendants warned in the February 2020 Letter that acceleration would only occur if Walker did not cure "on or before March 6, 2020."  *See Koeppling v. Seterus, Inc.*, No. 1:17cv995, 2020 WL 2063416, at *20 (M.D.N.C Apr. 29, 2020) (hearing testimony that "acceleration of the loan takes place at that point in which it's referred from pre-foreclosure to foreclosure").  Because Walker does not allege facts that could give rise to a reasonable inference that the contents of the December 2019 Letter constituted an official notice of nonjudicial action, the Court cannot find that Hill referred the loan for nonjudicial action in December 2019.  The Court would grant the Hill Motion to Dismiss Count I on that basis as well.

caused the loan to be referred for nonjudicial action prior to the 120-day requirement.  The Court will grant Hill's Motion to Dismiss Count I.

### B.      The Court Will Dismiss the Fraud Claim in Count II

Because even viewed favorably, Walker does not plausibly allege that he reasonably and justifiably relied, through any inquiry of his own, on any representation made by Hill, the Court will dismiss Count II.

### 1.      Legal Standard:  Actual and Constructive Fraud Under Virginia Law

Under Virginia law, "a false representation of a material fact, constituting an inducement to a contract, on which the defrauded party had a right to rely, is always grounds for rescission of the contract." *Persaud Companies, Inc. v. IBCS Grp., Inc.*, 425 F. App'x 223, 226 (4th Cir. 2011) (alterations and citations omitted).  A plaintiff asserting a cause of action for fraudulent inducement bears the burden of proving by clear and convincing evidence the following elements:  "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Persaud Cos. Inc. v. IBCS Group, Inc.*, 425 F. App'x 223, 226 (4th Cir. 2011) (quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387, 390 (1994)).  "Under Virginia law, a concealment or omission of a material fact may also give rise to a claim of actual fraud." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999).

"In order to prove reliance, a plaintiff must demonstrate that its reliance upon the representation was reasonable and justified." *Id.* (citation omitted).  Justifiable reliance and reasonable reliance require different showings, and in fact, reasonable reliance poses a higher standard. *White v. Potocska*, 589 F. Supp. 2d 631, 650 n.18 (E.D. Va. 2008) ("While the

majority of states require only justifiable reliance, . . . Virginia is one of the minority of states that requires the higher standard of reasonable reliance to establish fraud."). "The touchstone of reasonableness is prudent investigation." *Hitachi*, 166 F.3d at 629. "A plaintiff cannot claim that [his or her] reliance was reasonable and justified when [he or she] makes a partial inquiry, with full opportunity of complete investigation, and elects to act upon the knowledge obtained from the partial inquiry." *Id.* (citation omitted).

> As the United States Court of Appeals for the Fourth Circuit has explained:
>
> Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them.  Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

*Persuad*, 425 F. App'x at 226 (quoting *Costello v. Larsen*, 29 S.E.2d 856, 858 (1944)). "The cases in Virginia are clear, however, that one cannot, by fraud and deceit, induce another to enter into a contract to [a person's] disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth." *Hitachi*, 166 F.3d at 629 (internal quotation marks and citations omitted). "A buyer may therefore recover for fraud if the seller does or says anything to divert the buyer from making the inquiries and examination which a prudent man ought to make." *Id.* (internal quotation marks and citations omitted).

### 2. Because Walker Does Not Plausibly Allege That He Reasonably and Justifiably Relied on Hill's Representations, the Court Will Dismiss the Fraud Claim in Count II

Even read favorably, Walker does not plausibly allege facts to show he reasonably inquired about the nature of the document he signed, the Court will dismiss Count II.  While Walker plausibly alleges facts to support of five of the six *Persuad* factors, Walker offers mere

15

bald conclusions or formulaic assertions when trying to show that he reasonably and justifiably relied on Hill's representations.

In the Second Amended Complaint, Walker does not allege any facts as to the circumstances surrounding his signature on the Deed in Lieu of Foreclosure except that "Hill, through agency, caused [Walker] to sign papers as a condition to making the loan." (SAC ¶ 22.) Walker then claims that Hill fraudulently added the first page "to the said second page signed by Walker, [and] stated that the two pages constituted a deed in lieu of foreclosure." (*Id.* ¶ 25.) But Walker does not plausibly describe—if at all speak to—how Hill characterized the document or any inquiries of his own as to the nature of the page he signed.

Additionally, Walker does not allege that Hill did or said anything to divert Walker "from making the inquiries and examination which a prudent [person] ought to make." *Hitachi*, 166 F.3d at 629. The Court cannot find that Walker made any inquiry, much less a "reasonable and justified" one, into the nature of the document. *Id.* at 624. Because the Court concludes that Walker fails to plausibly allege facts giving a rise to a reasonable inference that he reasonably relied on Hill's representations, the Court will grant Hill's Motion to Dismiss Count II.

**C.    Because Walker Does Not Allege That Hill Violated a Legally Enforceable Obligation, the Court Must Dismiss the Breach of the Implied Covenant of Good Faith and Fair Dealing Claim in Count III**

Because Virginia recognizes an implied covenant of good faith and fair dealing only as a breach of contract claim and because Walker does not allege that Hill violated any legally enforceable obligation, the Court will dismiss Count III.

Every contract governed by Virginia law "contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (citing *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541–42 (4th Cir. 1998)). A

claim for breach of the implied covenant of good faith and fair dealing under Virginia law

requires: "(1) a contractual relationship between the parties, and[,] (2) a breach of the implied

covenant." *Id.* (citations omitted). A breach of this duty, however, is not a separate tort, but

rather "gives rise only to a cause of action for breach of contract." *Smith v. Flagstar Bank,*

*F.S.B.*, No. 3:14cv741, 2015 WL 1221270, at *6 (E.D. Va. Mar. 17, 2015) (internal quotations

and citations omitted). The duty of good faith and fair dealing "prohibits a party from acting

arbitrarily, unreasonably, and in bad faith" or "in such a manner as to prevent the other party

from performing its obligations under the contract." *Bourdelais v. JPMorgan Chase Bank, N.A.*,

No. 3:10cv670, 2012 WL 5404084, at *5 (E.D. Va. Nov. 5, 2012) (internal quotations and

citations omitted).

Walker alleges that Hill violated an implied duty of good faith and fair dealing in

fraudulently causing Walker to sign the Deed in Lieu of Foreclosure. As to the first element,

well-settled law provides that "[a] deed of trust is construed as a contract under Virginia law,"

*Coon v. Fed. Nat'l Mortg. Ass'n*, 2018 WL 3887508, at *7 (E.D. Va. Aug. 15, 2018), and "notes

and contemporaneous written agreements executed as part of the same transaction will be

construed together as forming one contract," *Bourdelais*, 2012 WL 5404084, at *4 (internal

quotations and citations omitted).

But Walker does not establish the first element, the existence of a contractual

relationship, at any time prior to Walker signing the Loan Agreements. Walker alleges that Hill

violated an implied covenant of good faith and fair dealing *prior* to Walker's signature on the

Loan Agreements when Hill failed to present him with the second page of the document.

Because the alleged actions occurred prior to Walker's signature, the Court cannot, even reading

the Second Amended Complaint favorably, conclude that a contractual obligation existed

between the Parties such that Hill could act "in such a manner as to prevent the other party from performing its obligations under the contract." *Bourdelais*, 2012 WL 5404084, at *5 (internal quotations and citations omitted).  Thus, the Court will grant the Hill Motion to Dismiss Count III.

### D. Walker Plausibly Alleges That the Tucker Defendants Violated the FDCPA by Preemptively Demanding Attorneys' Fees in the February 2020 Notice

Because Walker brings Counts IV and V under the FDCPA and only against the Tucker Defendants, the Court reviews those claims in tandem.  Employing the standard FDCPA analysis, the Court first finds that Walker plausibly alleges that the Tucker Defendants acted as debt collectors when they engaged in actions beyond those of enforcing of a security interest. Second, the Court concludes that, once Walker signed the Loan Agreements and created an obligation to pay money, Walker became the object of collection activity arising from a consumer debt.  As to a third consideration, the Court finds that the Second Amended Complaint does not plausibly allege that the Tucker Defendants violated the FDCPA by threatening to record the Deed in Lieu of Foreclosure.

Despite this, regarding Count V, the Court concludes that, reading the Second Amended Complaint favorably, Walker plausibly alleges facts that could support a reasonable inference that the Tucker Defendants violated the FDCPA by demanding attorneys' fees before such fees became due under the terms of the Note.

### 1. Legal Standard:  FDCPA Generally

"The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *Lembach v. Bierman*, 528 F. App'x 297, 301 (4th Cir. 2013), *abrogated on other grounds by Rotkiske v. Klemm*, 140 S. Ct. 355 (2019) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135

(4th Cir. 1996)).  To prevail on an FDCPA claim, a plaintiff must allege that:  (1) the defendant constitutes a debt collector as defined by the FDCPA; (2) the plaintiff was the object of collection activity arising from a consumer debt as defined by the FDCPA; and, (3) the defendant engaged in an act or omission prohibited by the FDCPA, such as using a false, deceptive, or misleading representation or means in connection with the collection of any debt.  *See Moore v. Commonwealth Trs., LLC*, No. 3:9cv731, 2010 WL 4272984, at \*2 (E.D. Va. Oct. 25, 2010) (citing *Blagogee v. Equity Trustees, LLC*, No. 1:10cv13, 2010 WL 2933963, at \*5 (E.D. Va. July 26, 2010)).

As a threshold matter, the FDCPA includes in its definition of "debt collector" "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The statute specifically excludes from coverage "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such . . . is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement."  *Id.* § 1692a(6)(F)(i).  The United States Supreme Court has interpreted 15 § U.S.C. 1692(a)(6) to exclude those persons engaged only in the "enforcement of security interests" from the definition of a "debt collector."  *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1036–37 (2019).

Of course, to find that a defendant's actions functioned as collection activity arising from a consumer debt, "there must first be a 'debt.'"  *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 375 (4th Cir. 2017), *abrogated on other grounds by Obduskey*, 139 S. Ct. 1029.  The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or

not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5); *Wilson*, 443 F.3d at

375.  The FDCPA also provides that "[t]he term 'consumer' means any natural person obligated

or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

Finally, the FDCPA also prohibits a debt collector from "us[ing] any false, deceptive, or

misleading representation or means in connection with the collection of any debt," 15 U.S.C.

§ 1692e, or "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," 15

U.S.C. § 1692f; *see also Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013) (observing

that "the courts use § 1692f.").  Because courts use § 1692 "to punish conduct that FDCPA does

not specifically cover," a § 1692f cause of action may not be based on the "same alleged

misconduct that undergirds [a] § 1692e claim." *Arnett v. Hodges Law Office, PLLC*, No.

3:18cv370, 2019 WL 4195343, at *5 (E.D. Va. Sept. 4, 2019)

Under § 1692e, "[w]hether a communication is false, misleading, or deceptive in

violation of § 1692e is determined from the vantage of the 'least sophisticated consumer,'

evaluating how that consumer 'would interpret the allegedly offensive language.'" *Powell v.

Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014) (quoting *Russell v. Absolute

Collection Servs., Inc.*, 763 F.3d 385, 394–95 (4th Cir. 2014)).

When a party alleges misrepresentations, the court must determine whether the

misrepresentations are material. *Lembach*, 528 F. App'x at 302.  Under this standard, "courts

typically ask whether [a false statement] would mislead or deceive the least sophisticated

consumer with respect to the alleged debt," by affecting a consumer's ability to make intelligent

decisions as to the debt. *Penn v. Cumberland*, 883 F. Supp. 2d 581, 589 (E.D. Va. 2012).  "The

materiality requirement limits liability under the FDCPA to genuinely false or misleading

statements that 'may frustrate a consumer's ability to intelligently choose his or her response.'"

*Powell*, 782 F.3d at 126 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)).  "Thus, only misstatements that are important in the sense that they could objectively affect the least sophisticated consumer's decision making are actionable."  *Id.* (citing Black's Law Dictionary 1124 (10th ed. 2014) (defining "material")).

        **2.**      **Because the Tucker Defendants Engaged in More Than Security Interest Enforcement By Sending Walker Letters That Demanded Payment of a Debt, the Tucker Defendants Acted As Debt Collectors Under the FDCPA**

Under the first element to analyze a FDCPA claim, the Court finds that the Tucker Defendants acted as "debt collector[s]" under the FDCPA by engaging in actions beyond that of mere enforcement of a security interest.  The Tucker Defendants argue that the Supreme Court's decision in *Obduskey* excludes them from FDCPA "debt collector[s]" because they acted only to enforce a security interest.  (Tucker Mot. Dismiss 9); *see* 15 U.S.C. § 1692a(6).  As the Supreme Court recently observed, the FDCPA contains both a "primary definition" and a "limited-purpose definition" of the term "debt collector."  *Obduskey*, 139 S. Ct. at 1035–36.  The primary definition of debt collector under the FDCPA "means any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  The limited-purpose definition states:  "For the purpose of section 1692f(6) of this title, [the] term [debt collector] also includes any person . . . in any business the principal purpose of which is the enforcement of security interests."  *Id.*

In *Obduskey*, the Supreme Court considered the interplay of these definitions to determine whether a law firm carrying out a nonjudicial foreclosure acted as a "debt collector" subject to the FDCPA.  139 S. Ct. at 1033–36.  The *Obduskey* Court found that the "limited-purpose definition narrows the primary definition, so that the debt-collector-related prohibitions

of the FDCPA (with the exception of § 1692f(6)) do not apply to those who . . . are engaged in no more than security-interest enforcement." *Id.* at 1037.  The Supreme Court then concluded that the defendant law firm fell within the FDCPA's limited-purpose definition when it initiated a nonjudicial foreclosure in the manner required by state law. *Id.* at 1037–39.  Accordingly, the law firm was only subject to § 1692f(6) of the FDCPA.  *Id.*

The Tucker Defendants argue that they only fall within the limited definition applicable under § 1692f because they engaged solely in "security interest enforcement."  (Tucker Mot. Dismiss 10, ECF No. 22.)  The Tucker Defendants read *Obduskey* too broadly.  The Supreme Court's holding in *Obduskey* extends only to security-interest enforcers engaged in nonjudicial foreclosure proceedings in a manner required by state law.  *See* 139 S. Ct. at 1039 (stating that "we assume that the notices sent by [defendant] were antecedent steps required under state law to enforce a security interest" and reasoning that "we think the [FDCPA's] (partial) exclusion of 'the enforcement of security interests' must also exclude the legal means required to do so").  Unlike the defendants in *Obduskey*, the Tucker Defendants did not act as a law firm solely retained to execute a nonjudicial foreclosure.  Instead, the Tucker Defendants admit their participation in servicing Walker's loan began before Walker even signed the Loan Agreements, including:  (1) "prepar[ing] the promissory note, deed of trust, and deed in lieu of foreclosure for the loan" on behalf of Hill; and, (2) representing Walker "at the closing of his purchase of the property."  (Tucker Mot. Dismiss 2.)

Indeed, the Tucker Defendants do not identify any provision of Virginia law that required this conduct to enforce its security interest.  *See* Va. Code Ann. §§ 55.1-300–63 (outlining nonjudicial foreclosure proceeding requirements).  Therefore, *Obduskey* does not exempt the Tucker Defendants from the full coverage of the FDCPA and thus does not provide a basis for

22

dismissal of any of Walker's FDCPA claims. *See Cooke v. Carrington*, No. 18cv205, 2019 WL 3241128, at *2 (D. Md. July 18, 2019) (finding that defendant mortgage servicing company acted as a "debt collector" subject to the full coverage of the FDCPA when it sent a letter to plaintiff attempting to collect a debt because the letter was not required by state law to pursue a nonjudicial foreclosure); *Sevela v. Kozeny & McCubbin, L.C.*, No. 18cv390, 2019 WL 2066924, at *4–5 (D. Neb. May 2, 2019) (concluding the same of defendant law firm).

    More tellingly, the Tucker Defendants' position in their briefing runs contrary to the very letters they sent to Walker. The Tucker Defendants sent Walker notices that read:

> This is an attempt to collect a debt and any information obtained will be used for that purpose. If you do not dispute the validity of this debt or any portion of it within 30 days after receipt of this letter, we will assume it is valid. If you dispute the validity of this debt or any portion of it in writing within 30 days, we will mail verification of the debt to you. At your request in writing, within 30 days, we will provide you with the name and address of the original creditor if different from the current creditor. If requested to by our client, we may proceed to institute court action without waiting 30 days if the debt is not disputed.

> (*See* Feb. 20, 2020 Notice; Mar. 19, 2020 Notice.)

    Based on the contents of the 2020 Notices, Defendants fall under the FDCPA's primary definition of "debt collector[s]." *Compare Wilson*, at 374–75 (finding defendants acted as FDCPA debt collectors by sending letters that identified as "an attempt to collect a debt . . . written pursuant to the provisions of the [FDCPA], . . . [which] gave specific information concerning 'the amount of the debt,' the 'creditor to whom the debt is owed,' and the procedure for validating the debt"), *with Blagogee*, 2010 WL 2933963, at *6 (distinguishing defendants from *Wilson* because plaintiffs "never received an express demand for payment, notice of the person to whom their debt should be paid, or a statement indicating that [the trustee] was attempting to collect a debt").

The 2020 Notices provided the information required by 15 U.S.C. § 1692g(a) for the Tucker Defendants to qualify as debt collectors.[11]  The 2020 Notices identified the amount of the debt and the creditor to whom Walker owed the debt.  The 2020 Notices, as detailed previously, do not give official notice of nonjudicial action, but instead, "contain[] information almost entirely related to collection of the debt."  *Townsend v. Federal Nat. Mortg. Ass'n*, 923 F. Supp. 828, 838–39 (W.D. Va. 2013).  The 2020 Notices themselves characterize Defendants' efforts as "an attempt to collect a debt."  (*See* Feb. 20, 2020 Notice; Mar. 19, 2020 Notice.)  The Court readily finds that Defendants acted as debt collectors under the FDCPA.

---

[11] The FDCPA requires a debt collector to send a debtor a written notice containing certain information about the debt it is attempting to collect.  *See* 15 U.S.C. § 1692g(a).  Section 1692g(b) provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.  Collection activities and communications that do not otherwise violate this subchapter may continue during the 30–day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b).

### 3.     After Walker Entered into the Loan Agreements with Defendants, He Was the Object of Debt Collection Activity Arising from a Consumer Debt

As to the second FDCPA element, whether Walker was "the object of collection activity arising from a consumer debt as defined by the FDCPA, the Court finds that a "debt" did not exist until Walker entered into the Loan Agreements with Defendants.[12] *See Moore*, 2010 WL 4272984, at \*2.  After Walker signed the Loan Agreements, the Tucker Defendants meet the second FDCPA element because they then made Walker "the object of collection activity arising from a consumer debt as defined by the FDCPA."  *See id.*

Prior to signing the Loan Agreements, Walker had no "obligation or alleged obligation . . . to pay money arising out of a transaction," to create a "debt" required for FDCPA coverage. 15 U.S.C. § 1692a(5).  Walker signed all documents relating to the Loan Agreement, including the Note, Deed of Trust, and Deed in Lieu of Foreclosure, on the same day:  March 1, 2019. Although Walker alleges that Hill fraudulently induced him to sign the Deed in Lieu of Foreclosure, the Court has already found that such actions do not relate to a "debt" because Walker had no financial obligations until he signed the Loan Agreements.  *See Wilson*, 443 F.3d at 375–76.  Therefore, the Court will grant the Tucker Motion to Dismiss Count IV on the theory

---

[12] The Tucker Defendants also argue that Count IV should be dismissed because Walker does not identify which action violates which specific provision of the FDCPA.  (Tucker Mot. Dismiss 5.)  The Tucker Defendants suggest that such a failure constitutes grounds for dismissal because the actions could implicate more than one provision of the FDCPA, and different defenses arise under these different provisions.  *Compare* 15 U.S.C. § 1692e (False or Misleading Statements), *with* 15 U.S.C. § 1692f (Unfair Practices); *see also IAR Family Trust v. Suntrust Mortg., Inc.*, 2014 WL 1432378, at \*3 (W.D.N.C. Apr. 14, 2014) (finding that the plaintiff failed to state a claim under the FDCPA when he failed to identify the specific provision of the FDCPA that defendant allegedly violated).

The Court need not address the issue as, for the reasons detailed below, no debt existed at the time Walker entered into the loan agreements.  Therefore, the actions cannot fall under the FDCPA.

that the signing of the Deed in Lieu of Foreclosure constituted an FDCPA violation because it fails to state a claim for entitlement to relief.

In contrast, after Walker signed the Loan Agreements, he became "the object of collection activity arising from a consumer debt as defined by the FDCPA." *Wilson*, 443 F.3d at 375–76 (finding that defendants' efforts to collect mortgage payments under deed of trust "were . . . in connection with a 'debt'"). Walker, once he signed the Loan Agreements, created an "obligation . . . to pay money arising out of a transaction . . . in which the money, property, insurance, or services . . . are primarily for person, family, or household purposes." 15 U.S.C. § 1692a(5).

> **4. The Court Will Grant the Tucker Motion to Dismiss Count IV but Deny the Motion as to Count V Because Walker Plausibly Alleges That Defendants Violated the FDCPA by Preemptively Demanding Attorneys' Fees in the February 2020 Notice**

Viewed favorably, Walker plausibly alleges that the February 2020 Notice's demand for attorneys' fees violated the FDCPA. As such, the Court will grant the Tucker Motion to Dismiss Count IV, but deny as to Count V.

Walker alleges that three actions[13] result in six violations of the FDCPA: (1) "by letter dated December 12, 2019 Dankos, on behalf of Hill, threatened to record the deed in lieu of foreclosure;" (2) "by letter dated February 20, 2020, Tucker, on behalf of Hill, threatened to record the deed in lieu of foreclosure;" and, (3) the February 2020 Notice "was a materially defective cure notice under the terms of the note" because it "claimed at attorney's fees were

---

[13] Because the Court found *supra* that any action prior to Walker signing the Loan Agreements does not fall under the FDCPA and Walker does not present sufficient plausible facts to show the Deed in Lieu of Foreclosure should be rescinded, the Court does not consider Walker's fraudulent inducement argument under the FDCPA.

already due." (SAC ¶¶ 43, 46, 47, 56.)  Walker asserts that that such actions caused six

violations of the FDCPA because they:

(1)    "breached  [15  U.S.C.  §  1692e(2)(A)][14]  of  the  said  statute  by
misrepresenting the character and legal status of the debt because the said
actions indicated that the debt was subject to instant foreclosure, which was
not so because what was claimed to have been a deed in lieu of foreclosure
contradicted Walker's rights against instant foreclosure in the deed of trust
and under Virginia law;"

(2)    "breached [15 U.S.C. § 1692e(5)] of the said statute by threatening the
action of instant foreclosure of the home which could not legally be done;"

(3)    "breached [15 U.S.C. § 1692e(10)] by use of deceptive means (the aforesaid
threats to record what was claimed to be a deed in lieu of foreclosure) to
seek to collect the debt owed as a result of the note;"

(4)    "breached the requirement of [15 U.S.C. § 1692f][15] of the said statute to
refrain from 'unfair or unconscionable means to collect or attempt to collect
. . . debt' by threatening to record what was claimed to be a deed in lieu of
foreclosure in such manner as to effect an instant foreclosure without the
required protections to Walker in the deed of trust and Virginia statutory
law precluding instant foreclosure;"

(5)    "breached the specific provision of [15 U.S.C. § 1692f(6)] by threatening
dispossession of Walker from possession of the home by an instant

---

[14] Section 1692e states that "[a] debt collector may not use any false, deceptive, or
misleading representation or means in connection with the collection of any debt." 15 U.S.C.
§ 1692e.  The statute gives examples of conduct that violate it, including "[t]he false
representation of . . . the character, amount, or legal status of any debt; [t]he threat to take any
action that cannot legally be taken or that is not intended to be taken; [or] . . . [t]he use of any
false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C.
§§ 1692e(2)(A), e(5), and e(10).

[15] Section 1692f prohibits "a debt collector" from employing "unfair or unconscionable
means to collect or attempt to collect any debt," 15 U.S.C. § 1692f, including:

[t]aking or threatening to take any non-judicial action to effect dispossession or
disablement of property if (a) there is no present right to possession of the property
claimed as collateral through an enforceable security interest; (b) there is no present
intention to take possession of the property; or (c) the property is exempt by law
from such dispossession or disablement.

15 U.S.C. § 1692f(6).

foreclosure even though the deed of trust and Virginia statutory law on foreclosures . . . did not allow instant foreclosure;" and,

(6)    "breached [15 U.S.C. § 1692e(2)(A)] of the said statute by misrepresenting the character and legal status of the debt because [the February 2020 Notice] did not constitute a valid cure notice pursuant to the language in the note."

(SAC ¶¶ 48, 56(A).)

The Court will address each action seriatim, finding that Walker does not plausibly allege that the December 2019 Letter and February 2020 Notice violated the FDCPA by "threaten[ing] to record the deed in lieu of foreclosure." (SAC ¶¶ 46, 47.) This means that the Court will grant the Tucker Motion to Dismiss Count IV. In contrast, the Court will deny the Tucker Motion to Dismiss Count V because the Court concludes that, reading the Second Amended Complaint favorably to Walker, the February 2020 Notice's demand for attorneys' fees amounted to a material misstatement in violation of the FDCPA.

### i.    Walker Does Not Plausibly Allege That the Tucker Defendants' Threat to Record the Deed in Lieu of Foreclosure Violated the FDCPA

The Court already has concluded that Walker does not allege facts sufficient to support a reasonable inference that the December 2019 Letter improperly threatened to record the deed in lieu of foreclosure. Walker also does not attach the December 2019 Letter or allege its contents beyond stating only that it "threatened" to record the Deed in Lieu of Foreclosure. (SAC ¶ 46.) Without more, the Court cannot assess whether such a threat amounted to a "genuinely false or misleading statement[]" or an "unfair or unconscionable" means to collect a debt in violation of the FDCPA. 15 U.S.C. §§ 1692e, 1692f. For the reasons stated below and because "[m]ere labels and conclusions declaring that the plaintiff is entitled to relief are not enough," *Twombly*, 550 U.S. at 555, the Court grants the Tucker Motion to Dismiss Count IV.

The Court also concludes that Walker does not state a claim that the February 2020 Notice contained a material misstatement or unfair or unconscionable means to collect a debt by "threaten[ing] to record the deed in lieu of foreclosure." (SAC ¶ 47.) First, the Court already has determined that Walker does not allege a reasonable and justifiable reliance on any representation made by Hill that is sufficient to rescind the contract. Second, because the February 2020 Notice falls well beyond the 120-day requirement, Defendants would have been within their right to "record the Deed in Lieu of Foreclosure which [Walker] signed as a condition of the loan agreement." *See Koepplinger v. Seterus, Inc.*, No. 1:17cv995, 2020 WL 2063416, at *20 (M.D.N.C. Apr. 29, 2020) (finding that defendant's notice contained a material misstatement when it claimed defendant "may proceed with the acceleration and foreclosure" prior to the 120-day requirement). Because enforcing the security interest would have been within Defendants' rights under applicable law, the Court grants the Tucker Motion to Dismiss Count IV.

> **ii.    Because the Note's Terms Limited Attorneys' Fees to the Loan's Maturity Date, the Tucker Defendants' Demand for Attorneys' Fees in the February 2020 Notice Amounts to a Material Misstatement in Violation of the FDCPA § 1692e**

Walker plausibly claims that Defendants made a material misstatement in violation of FDCPA § 1692e(A)(2) by demanding payment of attorneys' fees because the Note terms only provided attorneys' fees "as [the loan] matures." (Note 2.) "The FDCPA prohibits attempts to collect nonexistent debt, including attorney's fees." *Jackson v. Sagal*, 370 F. Supp. 3d 592, 601 (D. Md. 2019) (finding that defendant violated FDCPA by demanding attorneys' fees that "were not incurred or awarded" from a prior judgment); *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 591 (D. Md. 1999) (holding that defendants' demand for attorney's fees violated the

FDCPA because the "lease [did] not authorize the collection of attorney's fees where no attorneys['] fees have been incurred").

Walker plainly pleads facts to support an inference that the Tucker Defendants preemptively demanded attorneys' fees under the Note's provisions.  The Note provides, "[i]f the debt hereby evidenced be not paid *as it matures* and is placed in the hands of an attorney for collection," Defendants may demand "attorney's fee[s] for such collection."  (Note 2 (emphasis added).)  And the February 2020 Notice merely warned that "[f]ailure to cure the default by payment of [$14,700] on or before March 6, 2020 will result in the acceleration and call of the Note in full."  (Feb. 20, 2020 Notice 2.)  As such, the loan had not yet "mature[d]" by the date of the February 2020 Notice.  (Note 2.)  Viewing the Second Amended Complaint as true and in a light most favorable to Walker, Defendants misstated Walker's total amount due by demanding attorneys' fees at 20% of the amount due for $2,450 total.  (*Id.*; Feb. 20, 2020 Notice.)  Notably, Defendants do not present any argument suggesting that a plain reading of "as [the loan] matures" includes legal action prior to maturity.

As to materiality, the Court finds that a misstatement for attorneys' fees, equaling 16% of the total amount due or $2,450, "material" to Walker's decision making.  *Powell*, 782 F.3d at 126.  When considering whether a misstatement of the amount due "could objectively affect the least sophisticated consumer's decision making," *id.*, "the proper analysis requires consideration of the degree to which the amount due on the debt was overstated and whether the extent of the overstatement would have been material to the least sophisticated consumer."  *Compare Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 379 (4th Cir. 2016) (finding a 10.4% overstatement of $165.02 "sufficient to be important to how the least sophisticated consumer responds by causing confusion"), *with Arnett*, 2019 WL 4195343, at *4 (classifying an

understatement of $75, or 1.9% as a "minimal discrepancy" that "[did] not rise to the level of an important misstatement" (internal quotations omitted)).  Viewing the facts in a light most favorable to Walker, the February 2020 Notice misstated the total amount due by $2,450, or 16% of the demand of $14,700.  Because courts have typically found misstatements of more than 10% sufficient to be "material to the least sophisticated consumer," *Conteh*, 648 F. App'x at 379, a misstatement of 16% here suffices, certainly at this procedural posture, to be considered a "material" misstatement.  *Powell*, 782 F.3d at 126.

Because Walker states a claim that Defendants materially misled him in the February 2020 Notice, the Court denies the Tucker Motion to Dismiss Count V.

### E. Because the Court Dismisses All Other Counts Alleged Against Hill, the Court Will Dismiss Count VI

Because the Court may not consider a declaratory judgment without an "actual controversy" between the Parties and because the Court dismisses all other Counts alleged against Hill (Counts I, II, & III), the Court will dismiss Count VI.

The Fourth Circuit has identified three instances when a federal court may properly consider a declaratory judgment:

> (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (*e.g.*, federal question[16] or diversity jurisdiction[17]); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

---

[16] To exercise federal question jurisdiction, the plaintiff must assert a cause of action "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. Walker seeks to invoke the Court's federal question jurisdiction under RESPA and FDCPA. (SAC 3, 7–14.)  Walker's additional three state claims fall under supplemental jurisdiction. 28 U.S.C. § 1367(a).

[17] To exercise diversity jurisdiction, the plaintiff must show "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  In a declaratory judgment action "it is well

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (citations omitted).

Walker seeks declaratory judgment to find that Hill lacks the authority to deprive Walker of his home by recording the deed in lieu of foreclosure.  (SAC 14.)  Walker bases his request for declaratory judgment on the same argument previously discussed:  that Hill fraudulently induced Walker to sign the Deed in Lieu of Foreclosure because its terms contradicted the terms of the Deed of Trust.  (*Id.* ¶¶ 65–66.)  Walker's argument regarding fraudulent inducement, recission, and reasonable reliance have also faltered, which renders any claim in Count VI for supplemental jurisdiction unaffirmable.  Without a legal basis to do otherwise, the Court must adhere to the contract's "plain meaning."  *Hitachi*, 166 F.3d at 624.  Unable to state any claims other claims against Hill, Walker does not allege an "actual controversy" between him and Hill.  *Volvo Constr. Equip. N. Am., Inc.*, 386 F.3d at 592.  Walker does not plausibly state a basis to rescind the Deed in Lieu of Foreclosure, the Court denies with prejudice Count VI.

### IV.  Conclusion

For the foregoing reasons, the Court will grant in its entirety the Hill Motion to Dismiss, and grant the Tucker Motion to Dismiss Count IV, but deny the Motion as to Count V.  An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: March 19, 2021
Richmond, Virginia

---

established that the amount in controversy is measured by the value of the object of the litigation."  *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (citations omitted).